**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CURTIS LEE ERVIN,
*Petitioner-Appellant*,

v.

RONALD DAVIS, Warden, California
State Prison at San Quentin,
*Respondent-Appellee*.

No. 16-99010

D.C. No.
5:00-cv-01228-
LHK

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted June 2, 2021
Seattle, Washington

Filed September 10, 2021

Before: Ronald M. Gould, John B. Owens, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Owens

# SUMMARY[*]

## Habeas Corpus

The panel vacated the district court's judgment denying Curtis Ervin's 28 U.S.C. § 2254 habeas corpus petition seeking relief from his first-degree murder conviction and death sentence, and remanded so that the district court can apply in the first instance the Supreme Court's guidance in *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019), which summarized the factors courts should consider when evaluating a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).

The panel noted that the State of California conceded that the district court—without the benefit of *Flowers*—did not consider those factors, even though the record contained evidence potentially applicable to several of them, and Ervin identified the applicable evidence when arguing that the California Supreme Court's determination was unreasonable. The panel noted that the district court considered neither statistical evidence regarding the prosecutor's use of peremptory strikes nor the prosecutor's misrepresentations of the record, and did not consider side-by-side comparisons for six of the nine challenged jurors identified by Ervin. Mindful of the Supreme Court's instruction to evaluate the "relevant history of the State's peremptory strikes in past cases" when considering *Batson* claims, the panel left it to the district court to decide in the first instance whether, in light of *Cullen v. Pinholster*, 563

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

U.S. 170 (2011), the parties may submit additional evidence to support their positions on this factor because the California Supreme Court made an unreasonable determination of the facts, which would relieve the district court of AEDPA deference, or whether such evidence must be submitted for the first time in state court, as the State suggested at oral argument.

The panel resolved remaining issues in a concurrently filed memorandum disposition.

## COUNSEL

Pamala Sayasane (argued), Law Office of Pamala Sayasane, San Francisco, California; Robert R. Bryan (argued), Law Office of Robert R. Bryan, San Francisco, California; for Petitioner-Appellant.

Allan I. Yannow (argued), Deputy Attorney General; Glenn R. Pruden, Supervising Deputy Attorney General; Ronald S. Matthias, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, San Francisco, California; for Respondent-Appellee.

**OPINION**

OWENS, Circuit Judge:

Curtis Ervin appeals from the denial of his 28 U.S.C. § 2254 habeas petition seeking relief from his first-degree murder conviction and death sentence. We have jurisdiction under 28 U.S.C. § 1291. In light of the Supreme Court's recent decision in *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019), which summarized the factors courts should consider when evaluating a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), we vacate the district court's order denying relief and remand so the district court can apply in the first instance the Supreme Court's guidance in *Flowers*.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

As the California Supreme Court explained in detail, Ervin, a black man, was convicted and sentenced to death in 1991 for carrying out a murder for hire in Alameda County. *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000). During jury selection, the prosecution exercised 15 peremptory strikes, removing 9 of the 11 black prospective jurors subject to questioning. *See id.* at 518. The black prospective jurors who were removed were: Alfred Hudnall, JoAnn White, Lisa Kelley, Eloise Knox, Roslyn Roberts, Caroline Mullen, James Thomas, Pamala Blake, and Lionel Jackson. *Id.* at 519. Ultimately, Ervin's jury included one black juror and one black alternate—the rest of his jury was predominantly, if not entirely, white. *Id.*

---

[1] This opinion only addresses the *Batson* issue. A concurrently filed memorandum disposition resolves the remaining issues on appeal.

Ervin challenged the prosecutor's use of peremptory strikes as racially motivated, raising multiple objections under *Batson* and its California analog, *People v. Wheeler*, 583 P.2d 748 (Cal. 1978). *Ervin*, 990 P.2d at 518. In response, the prosecutor explained that his challenges were based on "specific juror attitudes on the death penalty," and that he removed at least three of the black prospective jurors because he surmised that their religious beliefs would preclude them from imposing a death sentence. For example, Hudnall was struck for his "deeply religious bent," while White was removed for her "religious bent" and answers during voir dire. *Id.* at 519. The state trial judge accepted the prosecutor's reasons as "reasonably specific and neutral" and denied Ervin's objections. *Id.* at 518.

The California Supreme Court agreed with the trial judge. Though the court recognized that the prosecutor's reasons were not always "particularly logical or substantial," it saw "no good reason to second-guess [the trial judge's] factual determination," and it did not scrutinize the record for factual support for the prosecutor's stated reasons. *Id.* at 519–20 (citation omitted). For example, the court accepted the prosecutor's reason for removing Hudnall—his "deeply religious bent"—despite contrary evidence in the record showing Hudnall was, in fact, not religious. *See id.* at 519. The court also explicitly declined to conduct a comparative analysis of the black prospective jurors who were struck compared with similarly situated white prospective jurors who were not struck.[2] *Id.* at 520.

---

[2] At the time, California did not require such a comparative analysis. *Ervin*, 990 P.2d at 520. The law since has changed. *See People v. Gutierrez*, 395 P.3d 186, 202 (Cal. 2017) ("[E]vidence of comparative juror analysis *must* be considered . . . for the first time on appeal if relied

In 2007, Ervin sought relief on his *Batson* claims in federal court.[3] In his habeas petition, Ervin highlighted the statistically "disproportionate number of blacks stricken by the prosecutor" (9 out of 11), as well as the low number of black prospective jurors in Ervin's final venire (17 out of 110). (ECF Doc. No. 97). Ervin also identified specific discrepancies between the prosecutor's stated reasons for removing Hudnall (his "deeply religious bent") and Hudnall's answers during voir dire, when Hudnall repeatedly stated he was "not a member of the church," had no religious background, and that his only church involvement was his daughter going to a Christian school and attending church there with her mother. Ervin's petition also highlighted inconsistencies between the prosecutor's stated reasons for removing White and his treatment of other, similarly situated prospective white jurors who were not removed.

The district court denied Ervin's petition. *Ervin v. Davis*, 150 F. Supp. 3d 1108, 1140 (N.D. Cal. 2015). The court focused its *Batson* analysis on three of the nine removed prospective jurors—Kelley, Thomas, and Roberts—and concluded, based on a comparative analysis of each of those three jurors, that the prosecutor's stated reasons withstood scrutiny. *Id.* at 1135–40. The district court did not evaluate the remaining six prospective jurors, including Hudnall and

---

upon by the defendant and the record is adequate to permit the urged comparisons." (citation omitted)).

[3] Ervin filed his first federal habeas petition in 2002 but requested a stay to pursue unexhausted claims in state court. After the California Supreme Court summarily denied Ervin's remaining claims in December 2005, Ervin filed the amended petition at issue here.

White, nor did it consider the overall context of the strikes.[4] *Id.* at 1136. The district court also did not analyze any statistical discrepancies regarding the number of black prospective jurors who were removed (9 out of 11); any disparate questioning by the prosecutor; or any relevant history regarding the State's exercise of peremptory strikes.

Ervin timely appealed.

## II. DISCUSSION

### A. Standard of Review

Because Ervin filed his habeas petition after 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). "A state court's finding that the prosecutor did not engage in purposeful discrimination is reviewed under the deferential standard set forth in 28 U.S.C. § 2254(d)(2)." *Jamerson v. Runnels*, 713 F.3d 1218, 1224 (9th Cir. 2013). "[T]he state court's decision will be upheld unless it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 1225 (quoting § 2254(d)(2)). "The standard is demanding but not insatiable." *Miller-El v. Dretke*, 545 U.S. 231, 240

---

[4] The district court concluded Ervin had "fail[ed] to advance specific arguments" as to those six prospective jurors because he did not specifically discuss them in his opposition to the State's motion for summary judgment. *Ervin*, 150 F. Supp. 3d at 1136. Ervin's opposition discusses only three specific jurors—Kelley, Thomas, and Roberts—but he refers back to his habeas petition regarding the remaining six: "In this case, the [*Batson*] error committed by the prosecutor is even more egregious given that the discriminatory conduct was repeated at least nine different times. Petitioner has detailed each instance of discrimination in the petition, but will revisit some of them here." (ECF Doc. No. 249).

(2005). Although we must ordinarily give a trial judge's findings "great deference," *Batson*, 476 U.S. at 98 n.21, "[d]eference does not by definition preclude relief," *Miller-El*, 545 U.S. at 240 (alteration in original) (citation omitted).

## B. The District Court, Without the Benefit of *Flowers*, Did Not Fully Analyze the *Batson* Question

Since the 1980s, the U.S. Supreme Court has issued many decisions on improper jury selection, starting with *Batson*. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400 (1991); *Purkett v. Elem*, 514 U.S. 765 (1995) (per curiam); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Rice v. Collins*, 546 U.S. 333 (2006); *Snyder v. Louisiana*, 552 U.S. 472 (2008); *Foster v. Chatman*, 136 S. Ct. 1737 (2016). The Court's recent decision in *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019), summarizes the existing law concerning jury selection and how courts should evaluate *Batson* challenges.

In *Flowers*, the Supreme Court reversed the conviction of a black defendant based in part on the disproportionate number of black prospective jurors who were removed from his jury pool. *Id.* at 2235. Of the "[f]our critical facts [that], taken together, require[d] reversal," two of them centered on statistical disparities—specifically, the State's use of peremptory challenges to remove 41 out of 42 black prospective jurors across the defendant's six trials combined, and the State's use of such challenges to remove 5 out of 6 black prospective jurors in the defendant's most recent trial alone. *Id*. The other "critical facts" were the State's "dramatically disparate questioning of black and white prospective jurors," and a comparative analysis of a black prospective juror who was removed compared with similarly situated white prospective jurors who were allowed to stay. *Id.*

In granting relief, the *Flowers* Court set out, in bullet point form, a list of factors or evidence that judges should consider in evaluating the validity of a peremptory strike when presented by a defendant:

- statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;

- evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case;

- side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case;

- a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing;

- relevant history of the State's peremptory strikes in past cases; or

- other relevant circumstances that bear upon the issue of racial discrimination.

*Id.* at 2243 (citing *Foster*, 136 S. Ct. at 1737; *Snyder*, 552 U.S. at 472; *Miller-El*, 545 U.S. at 231; *Batson*, 476 U.S. at 79).

The Court twice emphasized that reliance on the above factors "break[s] no new legal ground . . . [but] simply enforce[s] and reinforce[s] *Batson*." *Id.* at 2235, 2251. And

the Court reminded judges that these factors were to be considered holistically, based on "all of the relevant facts and circumstances." *Id.* at 2251. Indeed, the Court explicitly declined to adopt a piecemeal approach that evaluated each individual strike in a vacuum. *Id.* at 2250 ("The side-by-side comparison of [a juror who was removed against one who was retained] . . . cannot be considered in isolation in this case. . . . [W]e must examine the whole picture."); *see also Miller-El*, 545 U.S. at 265 (noting that evidence of discriminatory strikes must be viewed "cumulatively," even if the probative value of each individual component may be "open to judgment calls").

As the State concedes, the district court—without the benefit of *Flowers*—did not consider the above list of factors, even though the record contained evidence potentially applicable to several (if not all) of them,[5] and Ervin identified the applicable evidence when arguing that the California Supreme Court's determination of the facts was unreasonable. For example, the district court did not consider the statistical evidence regarding the prosecutor's use of peremptory strikes—here, removing 9 out of 11 black prospective jurors, compared to just 6 out of roughly 30 non-black prospective jurors. (ECF Doc. No. 387). In other words, the prosecutor struck 82 percent of the black prospective jurors who were called to the jury box, compared to about 20 percent of the non-black prospective jurors. *See Flowers*, 139 S. Ct. at 2248 (granting relief in large part because the statistical anomalies were "too disparate to be explained away or categorized as mere happenstance" (internal quotation marks and citation omitted)); *see also Miller-El*, 545 U.S. at 241–42 (characterizing the

---

[5] *See* Oral Argument at 38:43–44:00, *Ervin v. Davis*, No. 16-99010, https://www.ca9.uscourts.gov/media/video/?20210602/16-99010/.

prosecutor's removal of 10 out of 11 black prospective jurors as "remarkable" and noting that "[h]appenstance is unlikely to produce this disparity." (citation omitted)). As the Supreme Court emphasized, in cases where "[t]he numbers speak loudly," scrutinizing such statistical anomalies and any "pattern of strikes" is an essential part of the *Batson* inquiry. *Flowers*, 139 S. Ct. at 2245–46 (internal quotation marks and citation omitted).

The district court also did not consider the prosecutor's misrepresentations of the record, which Ervin also identified. Here, the prosecutor purportedly removed Hudnall for his "deeply religious bent" and statements regarding "religious conversion" and "everybody finding God." But, as noted above, Hudnall repeatedly stated that he was "not a member of the church," had no religious background, and that his only church involvement was his daughter going to a Christian school and attending church there with her mother.[6] (ECF Doc. No. 376). And, contrary to the prosecutor's assertions, Hudnall never made any statements regarding "religious conversion" or "finding God." In *Flowers*, the Supreme Court treated such factual inaccuracies as relevant in discerning the validity of the prosecutor's explanation. *See id*. at 2250 ("When a prosecutor misstates the record in explaining a strike, that

---

[6] In his juror questionnaire, Hudnall initially signaled that he was "involved with a church." During voir dire, however, he repeatedly clarified that he had been referring to his family's activities: "Well, I'm not a member of the church. My daughter goes to Patten Academy. She goes to church there and my wife goes to church there. I don't go."

misstatement can be another clue showing discriminatory intent.").**[7]**

Moreover, the district court did not conduct side-by-side comparisons for six of the nine challenged jurors identified by Ervin—and for the three jurors for which it did, the court analyzed their strikes in isolation. As noted above, *Flowers* reminds judges that they must consider the "overall context" surrounding the strikes, and not each strike in a vacuum. *Id.* at 2250 ("We cannot just look away [from the broader history and context]. Nor can we focus on [any one] strike in isolation.").

Finally, we are mindful of the Supreme Court's instruction to evaluate the "relevant history of the State's peremptory strikes in past cases" when considering *Batson* claims.**[8]** *Id.* at 2243. We leave it to the district court to decide in the first instance whether, in light of *Cullen v. Pinholster*, 563 U.S. 170 (2011), the parties may submit

---

**[7]** Our review of the record also identified other misstatements. For example, the prosecutor stated he removed Caroline Mullen in part because she made the comment, "Everyone is worth something." Yet she never did. (ECF Doc. No. 367). *See Flowers*, 139 S. Ct. at 2250 ("[W]hen considered with other evidence of discrimination, a series of factually inaccurate explanations for striking black prospective jurors can be telling.").

**[8]** In 2005, the prosecutor in this case, James Anderson, made several comments about jury selection and racial minorities to *The New York Times*. *See* Dean E. Murphy, *Case Stirs Fight on Jews, Juries and Execution*, N.Y. Times (Mar. 16, 2005), https://www.nytimes.com/200 5/03/16/us/case-stirs-fight-on-jews-juries-and-execution.html ("'When I was a young D.A., [the judge] would tell me, "If you have a cop case, be careful of blacks on the jury, because they don't like cops,"' Mr. Anderson said. 'I heard him tell defense lawyers: "Be careful of Asians. They are very law-and-order oriented."'").

additional evidence to support their positions on this factor because the California Supreme Court made an unreasonable determination of the facts, which would relieve the district court of AEDPA deference, or whether such evidence must be submitted for the first time in state court, as the State suggested at oral argument.[9]

Given the Court's recent guidance in *Flowers*, and under the unique circumstances of this case, we believe that the district court is in the best position to evaluate the *Flowers* factors anew. We therefore vacate the judgment and remand to the district court so it can evaluate Ervin's *Batson* claims in light of the Supreme Court's guidance in *Flowers*. *See* 139 S. Ct. at 2243.

**VACATED AND REMANDED.**

---

[9] *See* Oral Argument at 35:47–38:39, *Ervin v. Davis*, No. 16-99010, https://www.ca9.uscourts.gov/media/video/?20210602/16-99010/.