**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY C. OLIVER,
*Petitioner-Appellee*,

v.

RONALD DAVIS, Warden, California
State Prison at San Quentin,
*Respondent-Appellant.*

No. 20-99000

D.C. No.
2:10-cv-08404-
ODW

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted June 28, 2021
Pasadena, California

Filed February 17, 2022

Before:  Richard R. Clifton, Milan D. Smith, Jr., and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

**SUMMARY***

**Habeas Corpus**

The panel reversed in part and vacated in part the district court's judgment granting habeas relief to Anthony Oliver, who challenges his California state conviction (and death sentence) on two counts of first-degree murder with special circumstances and one count of attempted murder; and remanded for the district court to assess in the first instance claims dismissed as moot.

During the course of jury selection, the defense made four unsuccessful motions that the prosecutor violated *Batson v. Kentucky*, which prohibits the use of peremptory challenges to strike prospective jurors on the basis of race. One of the defense motions involved the exclusion of V.H., a black man. Oliver argued that the prosecutor's stated reason for striking V.H.—that V.H. acquitted in a rape case in his only prior jury service—was pretextual, as evidenced by the disparate treatment of S.P., who Oliver said was similar to V.H. except for her race and whom the prosecutor did not seek to strike. The district court determined that S.P. was similarly situated to V.H., and that the California Supreme Court's contrary finding was an unreasonable determination of the facts.

Reviewing the California Supreme Court's factual conclusions under 28 U.S.C. § 2254(d)(2), the panel considered four categories of evidence that Oliver said demonstrate pretext. In so doing, the panel wrote that each

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of several debatable inferences should have been resolved in favor of the state court; and that in substituting its own factual findings for those of the state court, the district court neglected to frame the relevant question as whether a fairminded jurist could reach a different conclusion. Because the decision of the California Supreme Court was not unreasonable, it must prevail.

Oliver argued that the district court's judgment may be affirmed on the alternative ground that the California Supreme Court's decision was, under 28 U.S.C. § 2254(d)(1), contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. Rejecting this argument, the panel wrote that the California Supreme Court did not rubberstamp the prosecutor's proffered explanations or otherwise misapply the law; and that no decision of the Supreme Court establishes that detailed factual findings are required before an appellate court may give deference to a trial court's *Batson* ruling. The panel wrote that to the extent the trial court's inquiry was deficient, it was, in any event, cured by the California Supreme Court's own searching analysis, which included a de novo comparative juror analysis.

The panel remanded to allow the district court to assess in the first instance *Batson* claims—dismissed by the district court as moot—concerning the strikes of three other prospective jurors.

**COUNSEL**

Shira Seigle Markovich (argued) and A. Scott Hayward, Deputy Attorneys General; Dana M. Ali, Supervising Deputy Attorney General; James William Bilderback II, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellant.

Ajay Kusnoor (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; Robert M Myers and David W. German, Newman Aaronson Vanaman LLP, Sherman Oaks, California; for Petitioner-Appellee.

**OPINION**

MILLER, Circuit Judge:

On July 21, 1989, Anthony Oliver and his half-brother, Albert Lewis, went to the Mount Olive Church in Los Angeles during an evening service. *See generally People v. Lewis*, 140 P.3d 775, 789–91 (Cal. 2006). A year before, Lewis had married Cynthia Mizell at the same church. The marriage proved an unhappy one: Lewis repeatedly attacked Mizell and threatened to kill her. When they arrived at the church this time, Oliver and Lewis were dressed in dark clothes and carrying shotguns. Oliver entered the church while Lewis stood guard outside. As one parishioner, Eddie Mae Lee, attempted to flee, Oliver shot her in the back. He then shot another man in the leg before he approached Mizell's cousin, Patrinella Luke, and shot her in the head. Both Lee and Luke died from their wounds.

Mizell normally played the organ at the Mount Olive Church, but she was not present at that service, having fled to Las Vegas just hours earlier. She told police that she believed Oliver and Lewis to be the gunmen. A search of Oliver's car revealed a black jacket containing gunshot residue as well as a shotgun that matched shells found at the church; palm prints on the gun matched Oliver's right hand.

Oliver and Lewis were both arrested and charged with two counts of first-degree murder and one count of attempted murder. During the course of jury selection for Oliver and Lewis's joint trial in California state court, the defense made four unsuccessful motions claiming that the prosecutor violated *Batson v. Kentucky*, 476 U.S. 79 (1986), which prohibits the use of peremptory challenges to strike prospective jurors on the basis of race. (Strictly speaking, the motions invoked not *Batson* but *People v. Wheeler*, 583 P.2d 748 (Cal. 1978), which established a state-law rule equivalent to *Batson*. But we have held that an objection under *Wheeler* is sufficient to preserve a *Batson* claim, so the distinction does not matter for our purposes. *McDaniels v. Kirkland*, 813 F.3d 770, 773 (9th Cir. 2015) (en banc).)

In *Batson*, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89. A *Batson* challenge proceeds in three steps: "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*, 476 U.S. at 93–94). Second, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Batson*, 476 U.S. at 94). Third, "the trial court must then decide . . . whether

the opponent of the strike has proved purposeful racial discrimination." *Id.* (omission in original) (quoting *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam)).

One of the defense motions—the only one relevant to this appeal—involved the exclusion of V.H., a black man. In general, V.H.'s answers in voir dire indicated that he would neutrally and fairly apply the law. For example, V.H. explained that he encouraged his son, who was incarcerated, "to do his time and not be bitter" and confirmed that his son's experience would not affect his ability to serve as a juror. V.H. said that he "ha[d] no trouble" imposing the death penalty, "as long as [he was] convinced of [the defendants'] guilt." He also agreed that he would vote to convict if he were convinced of the defendants' guilt beyond a reasonable doubt.

The prosecutor questioned V.H. about his prior jury experience. V.H. said that he had served as a juror in a rape case about one year earlier. When the prosecutor asked whether the jury in that case had reached a verdict, V.H. confirmed that it had and immediately volunteered that the verdict was not guilty. The prosecutor then asked whether "that case turn[ed] on the credibility of the victim," and V.H. said that it did. The prosecutor asked whether V.H. believed the victim, and V.H. said he did not.

The prosecutor did not challenge V.H. for cause but elected to exercise a peremptory challenge to remove him from the panel. Defense counsel objected and asserted that "the only reason" the prosecutor wanted him off the jury was because he was "a minority."

The trial court found a prima facie case of discrimination at *Batson*'s first step and asked the prosecutor to explain the

basis for her challenge. The prosecutor responded that she struck V.H. because of his prior jury experience:

> This juror indicated he acquitted on a rape case in Torrance one year ago, it was his only experience with jury service, that he found the victim not to be believable. Up until that point, I found the juror very acceptable.
>
> Unfortunately, it is my feeling that once a juror has had the experience of acquitting a defendant, it does create a certain mind set and the readiness to acquit. It certainly shows that he was able to reject the prosecutor's argument, reject the People's proof and reject the word of a woman.
>
> In this trial, we will have women testifying to the history of abuse by one of the defendants. Their believability and credibility will become crucial with this case. They are key witnesses in this case as the defense is very well-aware. I cannot in good conscience leave a juror on who has found a woman in a situation of a criminal trial who is a key witness to be uncredible and therefore acquit.

At first, the court granted a mistrial. It explained that "in the rape case, there were 11 other people" who voted with V.H., and the prosecution "simply . . . disagree[d] with the verdict." The prosecutor responded that the court was misunderstanding the government's burden and that it was not required to establish cause to excuse V.H., just a nondiscriminatory reason for doing so. She asked the court to allow her to brief the issue. The court agreed.

The next day, the court reversed its ruling and denied the defense motion for a mistrial. After further consideration, the court "conclude[d] that the sole issue that has to be dealt with is the court's belief in the genuineness of the People's explanation as to whether or not [the challenge] was based on a race-neutral reason and whether or not the People were motivated by racial bias." Noting that although "the defendants are both black," so were "all the victims, deceased and otherwise," the court reasoned that "[b]ased on the underlying fact situation, I don't see anything that appears to be inherently racial in the case nor do I believe there is any obvious motive under these facts for the prosecution to specifically exclude blacks." The court went on to explain that it found the prosecutor's explanation to be credible:

> The court does state my initial ruling yesterday was clearly not made on any finding that I disbelieved the prosecutor's explanation. I did not disbelieve it nor did I disbelieve the prior explanations. . . .
>
> As to the last challenge, [V.H.] did seem to meet all the tests with the sole exception of that prior jury experience. This was volunteered and not solicited. It is, nonetheless, race neutral.
>
> There is nothing in the history of this case that gives me a reason to question the genuineness of the reasons given by the prosecution.

The jury convicted Oliver and Lewis of two counts of first-degree murder with special circumstances and one

count of attempted murder, and it returned a verdict of death. *See* Cal. Penal Code §§ 187(a), 189, 664.

The California Supreme Court affirmed. *Lewis*, 140 P.3d 775. Oliver asserted numerous challenges to his conviction, including *Batson* claims based on the exclusion of several different prospective jurors. In rejecting the *Batson* claim related to V.H., the court explained: "In light of V.H.'s vote to acquit another criminal defendant of rape, rejecting the testimony of a female victim of violence, the prosecutor had reason to be skeptical about V.H.'s willingness to be fair in this case, in which the testimony of female victims of violence would be crucial." *Id.* at 811. It rejected Oliver's contention that the prosecution's proffered explanation was pretextual because she did not question S.P., who was not black, about the verdict returned in a prior criminal case in which S.P. had served on a jury, and she did not seek to strike S.P. *Id.* at 817–18. It explained that S.P. was not similarly situated to V.H. because the case that S.P. heard involved trespassing and assault, so it "does not appear . . . to have been similarly serious" to the rape case that V.H. heard. *Id.* at 818.

Oliver petitioned for a writ of habeas corpus in federal district court, and the district court granted the writ and ordered that Oliver be released or retried. The court concluded that "the only finding supported by the record is that the prosecutor's excusal of V.H. was 'motivated in substantial part by discriminatory intent.'" It determined that S.P. was similarly situated to V.H.—indeed, that "V.H. was much more favorable to the prosecution than was S.P."— and that the California Supreme Court's contrary finding was "an unreasonable determination of the facts." It dismissed as moot Oliver's remaining claims, including his *Batson* challenges to the exclusion of other potential jurors.

The State of California now appeals. We review the district court's grant of habeas relief de novo. *Lujan v. Garcia*, 734 F.3d 917, 923 (9th Cir. 2013).

As the district court acknowledged, "[a] state court's finding that the prosecutor did not engage in purposeful discrimination is reviewed under the deferential standard set forth in 28 U.S.C. § 2254(d)(2)." *Jamerson v. Runnels*, 713 F.3d 1218, 1224 (9th Cir. 2013). That statute provides that when a state court has addressed the merits of a claim, a federal court may grant a writ of habeas corpus only if the state court's "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other habeas cases involving *Batson* challenges, we have noted the possible applicability of section 2254(e), which states that, in a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner presents "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *see Currie v. McDowell*, 825 F.3d 603, 610 n.4 (9th Cir. 2016). The Supreme Court has not resolved which standard applies in these circumstances, *see Rice v. Collins*, 546 U.S. 333, 339 (2006), and we have "decided to apply 2254(d)(2) where, as here, the relevant evidence is entirely in the record." *Currie*, 825 F.3d at 610 n.4; *see Kesser v. Cambra*, 465 F.3d 351, 358 n.1 (9th Cir. 2006) (en banc). In this case, the parties agree that section 2254(d)(2) applies, and in any event it is not clear to us that there is any practical difference between the two provisions, both of which, after all, provide for a highly deferential review of the state court's findings. *See Sifuentes v. Brazelton*, 825 F.3d 506, 517 n.3 (9th Cir. 2016) ("[O]ur view of the reasonableness of the state court's factual determination in this case does not turn on any interpretive difference regarding the relationship between

these provisions." (quoting *Wood v. Allen*, 558 U.S. 290, 300 (2010))). We therefore review the California Supreme Court's factual conclusions under section 2254(d)(2).

In doing so, we "review the relevant portions of the record and use ordinary analytic tools to evaluate the prosecutor's race-neutral explanations," considering "whether a prosecutor's justifications are contrary to the evidence in the record, such as being 'implausible or fantastic,' based on mischaracterizations of a prospective juror's testimony, or belied by a comparative juror analysis." *Sifuentes*, 825 F.3d at 518 (citation omitted) (quoting *Purkett*, 514 U.S. at 768). A "comparative juror analysis" involves comparing the juror who was struck to other jurors who were allowed to serve—"[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). We also "consider whether evidence in the record shows that at least some of the prosecutor's reasons were 'permissible and plausible.'" *Sifuentes*, 825 F.3d at 518 (quoting *Rice*, 546 U.S. at 341).

We then ask "whether the state appellate court was objectively unreasonable in upholding the trial court's determination." *Sifuentes*, 825 F.3d at 518. We "may not grant the habeas petition unless the state court's decision was 'not merely wrong, but actually unreasonable.'" *Id.* (quoting *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014)). "Here our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial

evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012).

Oliver does not dispute that the prosecutor's stated reason for striking V.H. was race neutral, nor could he do so: "That a juror acquitted in a prior case is a valid, race-neutral reason to strike." *United States v. Mitchell*, 502 F.3d 931, 958 (9th Cir. 2007); *accord United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir. 1987). But he claims that the California Supreme Court erred in crediting that explanation. According to Oliver, the prosecutor's reason was pretextual, as evidenced by the disparate treatment of S.P., who was seated on the jury and who Oliver says was similar to V.H. except for her race. As we have explained, the California Supreme Court concluded that S.P. and V.H. were not similarly situated, which justified their disparate treatment. *Lewis*, 140 P.3d at 818. Oliver disputes that finding, pointing to four categories of evidence that he says demonstrate pretext.

First, Oliver emphasizes that the prosecutor did not conduct a searching inquiry into S.P.'s criminal jury service. But as the California Supreme Court explained, "lawyers must use their voir dire time judiciously," and there were legitimate reasons for the prosecutor not to focus on S.P.'s criminal jury experience. *Lewis*, 140 P.3d at 814 n.14. S.P. had served in a criminal trespass and assault case, which the prosecutor could have reasonably concluded was less serious than a felony rape case. Oliver correctly notes that trespass and assault can sometimes be charged as felonies. *See, e.g.*, Cal. Penal Code §§ 220, 601(d). And the precise nature of S.P.'s case is unknown because the prosecutor did not ask about it. Even so, the prosecutor could have inferred that S.P.'s case was likely less serious than V.H.'s, and also that a rape case would be likely to involve a female victim of

violence, which was of particular concern because of the witnesses who were to testify at Oliver's trial. Or the prosecutor simply may have chosen to probe S.P.'s possible biases by asking about her civil jury service instead.

The California Supreme Court noted that "[t]he prosecutor's concern with prospective jurors who had served on rape trials extended to others" in the jury pool, including M.J., whom the prosecution had questioned at length about her prior jury service. *Lewis*, 140 P.3d at 818. According to Oliver, the prosecutor's thorough questioning of V.H. and M.J. (who, like V.H., was black) is evidence of discrimination because it shows that the prosecutor made thorough inquiries only of black jurors. *See Miller-El*, 545 U.S. at 255. But since the prosecutor did not strike M.J., it is equally plausible to draw the opposite inference: The prosecutor was truthful about her concern and struck V.H. because she knew that he had voted to acquit and did not strike M.J. because she did not know how M.J. had voted. Moreover, the prosecutor questioned several non-black jurors about their service on juries in serious felony cases, including asking whether they had reached a verdict—the same question asked of V.H. before he volunteered that the jury had acquitted in his case.

Oliver resists the notion that the prosecutor questioned jurors uniformly about their prior criminal jury experience by pointing to the prosecutor's failure to question another prospective juror, D.A., about his service on a jury that deadlocked in a homicide case. Oliver did not mention D.A. in his briefing to the California Supreme Court on direct review or to the district court on habeas review. But even setting aside questions of forfeiture, the state trial court noted that D.A. had "some pretty strong feelings about the death penalty," for which he was ultimately challenged by the

defense. For example, while V.H. had written, "My feelings about the death penalty [are] strong, because you do not want to convict a person that's not guilty," D.A. wrote, "An eye for an eye," and "criminals get off too easily," adding that he "lean[s] toward the death penalty." It therefore would have been reasonable for the prosecutor to view D.A. as a highly favorable juror. And while the prosecutor did not ask any questions about D.A.'s prior jury service, the trial court did. Thus, even though the state court did not mention D.A., it could have reasonably concluded that V.H. and D.A. were not similarly situated. *See Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013).

Second, Oliver questions the prosecution's concern that V.H. might tend not to believe female victims of violence, pointing to S.P.'s civil jury service involving a female plaintiff in an excessive-force case against police officers. At the outset, we note that Oliver did not rely on this aspect of S.P.'s testimony in state court, so it is not surprising that the California Supreme Court did not discuss it. Even so, that S.P. found for the defendant in a case involving allegations of excessive force against a woman did not necessarily make S.P. similarly situated to V.H. To the contrary, that S.P. found for the police in an excessive-force case may instead have demonstrated an inclination to believe law enforcement, which could have distinguished S.P. as particularly desirable to the prosecution. For that reason, the state court could have reasonably concluded that S.P. was not similarly situated to V.H. based on her civil jury service. *See Walker*, 709 F.3d at 939.

Third, Oliver contends that V.H. was a more desirable juror to the prosecution than S.P., but the relative favorability of V.H. and S.P. to the prosecution was debatable at best. To be sure, S.P. stated, "I'm for the death

penalty only if the person is found guilty 100%," and she said she would require the prosecutor to prove her case "a little more" than beyond a reasonable doubt. On that basis, the prosecutor challenged S.P. for cause. (For reasons that are not apparent from the record, the trial court never ruled on that challenge, and it was never revisited.) V.H., by contrast, did not express any concern with the burden of proof, and his views on the death penalty were arguably more favorable to the prosecution. But, as discussed, V.H. had previously voted to acquit in a serious felony case, and S.P. had previously found for the police in an excessive-force case. It therefore was not unreasonable to conclude that S.P. may have been more favorable to the prosecution.

Fourth, Oliver points to statistics about the demographic composition of the jury, but the California Supreme Court reasonably declined to place great weight on those statistics. *Lewis*, 140 P.3d at 818 n.18. As Oliver notes, seven of nine black men were excluded from the venire. But a total of five black jurors were ultimately seated on the jury, which "may be considered indicative of a nondiscriminatory motive." *Gonzalez v. Brown*, 585 F.3d 1202, 1210 (9th Cir. 2009) (citation omitted). And while 50 percent of the prosecution's peremptory challenges were used on black jurors, who constituted only 21 percent of the jury pool, black jurors constituted 42 percent of the final jury.

Oliver obliquely suggests that the prosecutor's strikes of other jurors and miscellaneous commentary should be considered as circumstantial evidence that the strike of V.H. was race-based. But "consider[ing] the 'overall context,'" the state court could have reasonably concluded that the prosecutor's reasons for excluding V.H. were sufficiently sound to withstand any doubt cast upon them. *Ervin v. Davis*,

12 F.4th 1102, 1108 (9th Cir. 2021) (quoting *Flowers v. Mississippi*, 139 S. Ct. 2228, 2250 (2019)).

Under section 2254(d)(2), each of the "debatable inferences" that we have discussed should have been resolved in favor of the state court. *Rice*, 546 U.S. at 342. "Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Id.* at 341–42. In substituting its own factual findings for those of the state court, the district court neglected to "fram[e] the relevant question as whether a fairminded jurist could reach a different conclusion." *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) (per curiam). Because the decision of the California Supreme Court "was not unreasonable," it must prevail. *Rice*, 546 U.S. at 339.

Although the district court concluded only that the California Supreme Court had made an unreasonable factual finding, Oliver argues that its judgment may be affirmed on the alternative ground that the California Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As he puts it, the California Supreme Court "applied the wrong legal standard" when "it presumed that the prosecutor's strikes were constitutional and credited the trial court's factfinding, even though the trial court failed to undertake the 'sensitive inquiry' required by law." *See Batson*, 476 U.S. at 93 ("[A] court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available'" at *Batson*'s third step. (quoting *Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266 (1977))). "A state court decision is contrary to clearly established federal law if the

state court either applies a rule that contradicts the governing law set forth by the Supreme Court or arrives at a different result when confronted by a set of facts that are materially indistinguishable from a decision of the Supreme Court." *Sims v. Rowland*, 414 F.3d 1148, 1151 (9th Cir. 2005). That standard is not satisfied here.

We have held that "it would be contrary to clearly established Federal law . . . for a trial judge to 'rubberstamp' a prosecutor's proffered race-neutral explanation for exercising a disputed peremptory strike." *Murray*, 745 F.3d at 1004–05. And "a clear violation of *Batson*" might exist "where the trial judge misstates the test or impermissibly relies on an erroneous factor." *Id.* at 1005. "But, beyond these intuitive violations," we have explained, "*Batson* did not dictate the formal steps the trial court must take to evaluate the prosecutor's credibility." *Id.*

The decision of the California Supreme Court, which we review as "the last reasoned state court decision to address the claim at issue," *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007) (en banc), did not "rubberstamp" the prosecutor's proffered explanations or otherwise misapply the law. To the contrary, the California Supreme Court recognized that the trial court's determinations were entitled to deference only "[a]s long as the court ma[de] a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered." *Lewis*, 140 P.3d at 808 (internal quotation marks and citation omitted). Oliver nevertheless maintains that giving *any* degree of deference to the trial court was inappropriate because the trial court did not adequately consider the issue of pretext. But no decision of the Supreme Court establishes that detailed factual findings are required before an appellate court may give deference to a trial court's *Batson* ruling. *See People v. Williams*,

299 P.3d 1185, 1204 & n.21 (Cal. 2013); *Cook v. LaMarque*, 593 F.3d 810, 815–16 & n.2 (9th Cir. 2010). Indeed, the concurring and dissenting opinions on which Oliver relies acknowledge some uncertainty as to what degree of deference is warranted in the absence of detailed factual findings. *See, e.g.*, *Williams*, 299 P.3d at 1242–45 (Liu, J., dissenting) (collecting cases); *cf. Thaler v. Haynes*, 559 U.S. 43, 49 (2010) (per curiam). In any event, to the extent the trial court's inquiry was deficient, it was cured by the California Supreme Court's own searching analysis, which included a de novo comparative juror analysis. *Cf. Green v. LaMarque*, 532 F.3d 1028, 1030–31 (9th Cir. 2008).

In the end, Oliver does not identify any "intuitive violation[]" or unreasonable application of *Batson* that would justify setting aside the state court's decision under section 2254(d)(1). *Murray*, 745 F.3d at 1005. Because Oliver actually disputes the state court's factual findings, his challenge is properly made not under section 2254(d)(1) but instead under section 2254(d)(2). *See id.* at 1005 n.3; *Cook*, 593 F.3d at 816 n.2. And as to prospective juror V.H., as we have explained, that challenge fails.

Separately, Oliver presented the strikes of three other prospective jurors as distinct *Batson* claims, which the district court dismissed as moot. Oliver urges us to consider those claims as alternative grounds for affirmance, but because the district court did not consider them, we decline to do so now. *See Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir. 2013) (en banc). We instead vacate the dismissal of those claims and remand to allow the district court to assess them in the first instance. In doing so, we express no view on their merits.

**REVERSED in part, VACATED in part, and REMANDED.**