FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RAYMOND LEQUAN GIBBS,
*Petitioner-Appellant*,

v.

PATRICK COVELLO,
*Respondent-Appellee.*

No. 17-55456

D.C. No.
2:15-cv-00949-
AB-DFM

---

DEYAA KHALILL,
*Petitioner-Appellant*,

v.

W. L. MONTGOMERY, Acting
Warden,
*Respondent-Appellee.*

No. 18-55130

D.C. No.
2:15-cv-04947-
AB-DFM

OPINION

Appeal from the United States District Court
for the Central District of California
André Birotte, Jr., District Judge, Presiding

Argued and Submitted April 27, 2020
Pasadena, California

Filed April 28, 2021

Before:  Kim McLane Wardlaw, Mary H. Murguia, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denials of Raymond Gibbs's and Deyaa Khalill's habeas corpus petitions challenging their California state-court murder convictions after a trial at which the key prosecution witness, an informant, invoked the Fifth Amendment and refused to testify, so the court read to the jury a transcript of the informant's preliminary-hearing testimony.

This court granted a certificate of appealability as to whether the admission of the informant's preliminary-hearing testimony violated the petitioners' Sixth Amendment right to confrontation.

The panel explained that the adequacy of a defendant's opportunity for cross-examination turns on the scope of the cross-examination that the trial court permitted; a restriction on cross-examination cannot be justified by reference to other evidence presented.  The panel therefore evaluated the Confrontation Clause claim on the basis of the cross-

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

examination that the magistrate permitted at the preliminary hearing.

Applying AEDPA review, the panel considered the petitioners' two theories of why they did not have an adequate opportunity to cross-examine the informant at the preliminary hearing. First, the petitioners claimed that they were prevented from asking the informant some of the questions they wanted to ask. Reviewing the questions to which the magistrate sustained objections—as well as the question to which the informant invoked the Fifth Amendment—the panel concluded that it was not unreasonable for the California Court of Appeal to determine that the questions would not have given the jury a significantly different impression of the informant's credibility. Second, the petitioners claimed that they did not know to ask other questions because the prosecution did not turn over all of the relevant information about the informant until after the preliminary hearing. The panel wrote that even assuming that the timing of the disclosures implicated the Confrontation Clause, the California Court of Appeal could reasonably conclude that questioning based on those disclosures would not have materially enhanced the effectiveness of the cross-examination.

## COUNSEL

Tracy Casadio (argued) and Mark R. Drozdowski, Deputy Federal Public Defenders; Amy M. Karlin, Interim Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant Raymond Lequan Gibbs.

Fay Arfa (argued), Fay Arfa A Law Corporation, Los Angeles, California, for Petitioner-Appellant Deyaa Khalill.

Lindsay Boyd (argued), Deputy Attorney General; Stephanie C. Brenan, Supervising Deputy Attorney General; Susan Sullivan Pithey, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Los Angeles, California, for Respondents-Appellees.

## OPINION

MILLER, Circuit Judge:

Raymond Gibbs and Deyaa Khalill were charged with murder in California state court. The key prosecution witness was Samuel Feissa, an informant who said that both men had confessed to the crime. At trial, Feissa invoked the Fifth Amendment and refused to testify, so the court read to the jury a transcript of Feissa's preliminary-hearing testimony. The jury found Gibbs and Khalill guilty, and the California Court of Appeal affirmed their convictions. It held that Gibbs and Khalill had an adequate opportunity to cross-examine Feissa when he testified at the preliminary hearing, so the introduction of his testimony at trial did not violate their Sixth Amendment right to confront the witnesses against them. Gibbs and Khalill separately petitioned for a writ of habeas corpus, and the district court denied their petitions. Because the state court's decision was not an unreasonable application of clearly established federal law, we affirm.

I

On the evening of July 25, 2008, Adiel Quezada was found shot to death in Los Angeles. Gibbs, Khalill, and a

third defendant were charged with Quezada's murder. No eyewitnesses identified the defendants, and no physical evidence linked them to the crime. At the preliminary hearing, the prosecution presented the testimony of Feissa, who said that he was a former member of a criminal street gang called the 135 Piru and that Gibbs and Khalill were also members of the gang. According to Feissa, Khalill had admitted that he and Gibbs killed Quezada. In a separate conversation, Feissa said, Gibbs too had admitted that he and Khalill killed Quezada. Feissa also testified that he visited Khalill's house and saw guns of the same caliber as those used in the murder.

Counsel for Gibbs and Khalill cross-examined Feissa. They asked Feissa a series of questions about his motive to lie and his potential biases. Under cross-examination, Feissa testified about the leniency he had received from prosecutors for crimes he had committed, about cash payments and other benefits he had received from police officers, and about his history of drug use and memory problems. During some of those lines of inquiry, however, the magistrate cut off or limited the cross-examination. In doing so, the magistrate emphasized that "[t]here are limitations on cross examination at a preliminary hearing," stating that the proceeding "is not a trial and there is not a jury here."

Later in the cross-examination, Khalill's counsel inquired about a pending investigation into Feissa as a suspect in another murder. The magistrate stated that "a limited number of questions" would be allowed on the subject, so that the proceeding did not "start going into a lot of extraneous things." Feissa invoked the Fifth Amendment and did not respond to any further questions about the investigation. Gibbs's counsel asked about Feissa's activities with the gang, and Feissa again invoked the Fifth

Amendment. The magistrate denied the defendants' motion to strike all of Feissa's testimony.

After Feissa finished testifying, the defendants argued that the prosecution had not timely disclosed certain promises it had made to Feissa in exchange for his testimony. The prosecution provided additional information about its promises. Defense counsel objected that they were not permitted to cross-examine Feissa on those points. The magistrate did not recall Feissa as a witness.

At trial, Feissa invoked the Fifth Amendment and did not answer any questions. The court upheld Feissa's assertion of the privilege and determined that Feissa was unavailable as a witness. The court then ordered Feissa's preliminary-hearing testimony read to the jury. During the trial, the prosecution turned over Feissa's informant file to the defense. Using that file, the defense presented evidence of additional cash payments from the police to Feissa (beyond those they had asked Feissa about at the preliminary hearing), as well as evidence that the police had determined Feissa to be an unreliable informant.

At the conclusion of the trial, the jury requested a readback of Feissa's preliminary-hearing testimony, along with that of two other witnesses. After the court asked the jury to narrow its request, the jury decided to start with Feissa's testimony. The next day, the jury returned a verdict of guilty. The court sentenced Gibbs to imprisonment for 50 years to life. It sentenced Khalill to life in prison without the possibility of parole.

The California Court of Appeal affirmed. The court held that Gibbs and Khalill "had an adequate opportunity to cross-examine Feissa" at the preliminary hearing, and therefore the trial court did not violate the Sixth

Amendment's Confrontation Clause when it admitted Feissa's preliminary-hearing testimony at trial. The court explained that Gibbs and Khalill "were allowed to question [Feissa] about a variety of topics related to his credibility and his possible motives to be untruthful." As examples of the topics that defense counsel had been able to explore, the court cited "the leniency agreement [Feissa] had entered into, . . . the length of the sentence he was facing, his failure to complete community service in another case, his memory problems and whether those problems were caused by drug usage, . . . the money he had received for giving information to law enforcement, [and] his membership in the 135 Piru gang." The court acknowledged that the cross-examination had been limited, but it determined that "[t]he restrictions on the questioning imposed by the magistrate primarily related to redundant questioning on matters already covered or questioning on irrelevant or minor topics."

After the California Supreme Court denied review, Gibbs and Khalill each petitioned for a writ of habeas corpus. The district court denied their petitions. The district court agreed with the California Court of Appeal that the "defendants had an adequate opportunity to cross-examine Feissa at the preliminary hearing" and that the "limitations on cross-examination during the preliminary hearing were minor."

We granted a certificate of appealability limited to the question "whether the admission of Samuel Feissa's preliminary hearing testimony violated [the defendants'] Sixth Amendment right to confrontation."

## II

The Confrontation Clause of the Sixth Amendment, made applicable to the States by the Fourteenth Amendment,

guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Clause prohibits the government from introducing "testimonial" hearsay against the defendant, including "prior testimony at a preliminary hearing." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

But the government may introduce preliminary-hearing testimony if the witness is unavailable at trial, so long as the defendant had "a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68; *accord California v. Green*, 399 U.S. 149, 165 (1970) (prosecution may introduce preliminary-hearing testimony from an unavailable witness if the testimony was "given under circumstances closely approximating those that surround the typical trial," including the "opportunity to cross-examine"). A witness is "unavailable" if he invokes the Fifth Amendment to avoid testifying, as Feissa did here. *Green*, 399 U.S. at 168 n.17; *United States v. Shayota*, 934 F.3d 1049, 1052 (9th Cir. 2019). The admissibility of Feissa's preliminary-hearing testimony therefore turns on whether Gibbs and Khalill had a prior opportunity for cross-examination.

The right to cross-examine guaranteed by the Confrontation Clause includes not only the right "to delve into the witness' story to test the witness' perceptions and memory," but also the right to impeach the witness by "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17; *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 51–52 (1987) (plurality opinion). Cross-examination need

not be "certain to affect the jury's assessment of the witness's reliability or credibility" to implicate the Sixth Amendment. *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir. 2005). Rather, the Confrontation Clause protects the right to engage in cross-examination that "might reasonably" lead a jury to "question[] the witness's reliability or credibility." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Even so, the Confrontation Clause does not confer an unlimited right to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Instead, the right to cross-examine is "[s]ubject . . . to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation." *Davis*, 415 U.S. at 316. The Supreme Court has held that "trial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see Alford v. United States*, 282 U.S. 687, 694 (1931) (A trial court "may exercise a reasonable judgment in determining when [a] subject is exhausted" and should "protect [a witness] from questions which go beyond the bonds of proper cross-examination merely to harass, annoy or humiliate him.").

Of course, any "restrictions on a criminal defendant's rights to confront adverse witnesses . . . may not be arbitrary or disproportionate to the purposes they are designed to serve." *Ortiz v. Yates*, 704 F.3d 1026, 1035 (9th Cir. 2012) (alteration and internal quotation marks omitted) (quoting

*Michigan v. Lucas*, 500 U.S. 145, 151 (1991)). We have held that when a reviewing court evaluates a trial court's restrictions on cross-examination, it must consider the relevance of the excluded evidence, the weight of the interests justifying exclusion, and "whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007) (en banc) (alteration omitted) (quoting *United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999)).

The State urges us to evaluate the trial court's restrictions on cross-examination not just within the context of that examination, but rather "in the context of all the trial evidence bearing on the witness's credibility." Employing similar reasoning, the California Court of Appeal relied in part on the fact that "at trial, the trial court allowed the defense to attack Feissa's credibility with information that was 'not within the four corners of the preliminary hearing transcript.'" Therefore, the court concluded, the defendants had an adequate opportunity to impugn Feissa's credibility as a witness. That approach finds support in the language of some of our cases, but we conclude that it is not consistent with the Confrontation Clause.

In *Larson*, for example, we said that a limitation on cross-examination could be justified if the jury had "sufficient information to assess the credibility of the witness." 495 F.3d at 1103 (quoting *Beardslee*, 197 F.3d at 383). But we think that that phrase is best understood to refer to information adduced through cross-examination, not information that might be presented through other means. The Sixth Amendment "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."

*Crawford*, 541 U.S. at 61. Consistent with that principle, we have observed that "the fact that defense counsel impeached other witnesses bears no relevance in the confrontation right analysis." *Slovik v. Yates*, 556 F.3d 747, 754 (9th Cir. 2009). The adequacy of a defendant's opportunity for cross-examination therefore turns on the scope of the cross-examination that the trial court permitted; a restriction on cross-examination cannot be justified by reference to other evidence a defendant presented. *Van Arsdall*, 475 U.S. at 680; *cf. Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) (holding that the Confrontation Clause guarantees "the opportunity to question [a witness] about . . . potential bias," but not "to put on an additional witness to refute [the] responses").

To be sure, Confrontation Clause errors, like most trial errors, are subject to harmless-error analysis. *Van Ardsall*, 475 U.S. at 684; *Shayota*, 934 F.3d at 1052. If evidence impeaching a witness were introduced through some other means, that might be a basis for concluding that a restriction on cross-examination was harmless. But it would not mean that there was no error. We must evaluate the Confrontation Clause claim on the basis of the cross-examination that the magistrate permitted at the preliminary hearing, and it is to that issue that we now turn.

## III

Gibbs and Khalill advance two theories of why they did not have an adequate opportunity to cross-examine Feissa at the preliminary hearing. First, they point out that they were prevented from asking some of the questions they wanted to ask, either because the magistrate cut off questioning or because Feissa invoked the Fifth Amendment. Second, they say that they did not know to ask other questions because the

prosecution had not yet turned over all of the relevant information about Feissa. We consider each theory in turn.

At the outset, we emphasize that our review is limited by the standards prescribed in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. As relevant here, AEDPA provides that when a claim has been "adjudicated on the merits in State court proceedings," a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

AEDPA prescribes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). To obtain relief, a petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quoting *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam)). Rather, a petitioner "must show that the state court's decision [was] so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). That standard is "difficult to meet" because AEDPA "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).

Under AEDPA, "the range of reasonable judgment can depend in part on the nature of the relevant rule." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In other words, "'[t]he more general the rule' at issue—and thus the

greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (alterations in original) (quoting *Yarborough*, 541 U.S. at 664). Here, the relevant standard is a general one: "[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination," and a defendant seeking to establish a Confrontation Clause violation must show that the trial court exceeded that latitude. *Van Arsdall*, 475 U.S. at 679. It follows that "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *accord Watson v. Greene*, 640 F.3d 501, 508–09 (2d Cir. 2011).

AEDPA's deferential standard of review is particularly important in this case. On the merits, the Confrontation Clause question is a close one, and if we were answering that question de novo, we might not reach the same conclusion as the California Court of Appeal. But that does not mean that the state court's decision was unreasonable.

First, we consider Gibbs and Khalill's claim that they were prevented from asking Feissa some of the questions they wanted to ask. As the California Court of Appeal explained, defense counsel "were allowed to question [Feissa] about a variety of topics related to his credibility and his possible motives to be untruthful." For example, they were permitted to ask a series of questions about Feissa's criminal history and the leniency he had obtained from prosecutors. Feissa admitted that he had pleaded guilty to a burglary charge under an agreement that provided for his release from custody after he testified in this case. He also admitted that he had pleaded guilty to a drug offense and had promised to perform community service, but that he had not

in fact performed any service. And he admitted that he was facing an impending hearing for a probation violation. The magistrate allowed defense counsel to ask whether Feissa had talked to prosecutors "about being helped out on [the] probation violation matter" based on his testimony, but Feissa said, "I don't know what that means."

Counsel asked Feissa about cash rewards and other favorable treatment that the police had provided to him. Feissa admitted that a police detective paid him $2,700 in August 2008—the month following Quezada's murder—and another $300 a few months later. He admitted that he had faced a potential prosecution for a firearms offense but that the detective had made the case "disappear." And he admitted that the same detective had given him a car and had provided him with a phone number to call so that, as Feissa described it, "when I got pulled over by sheriffs they would let me go."

Counsel also asked Feissa about his drug use and his memory problems. Feissa admitted that he had told others that he forgets things because of his history of drug use. He described his history of using marijuana and cocaine, and he answered a question about using PCP, which he denied. He also said that he was not taking medication to treat memory loss.

To be sure, the magistrate repeatedly cut off lines of inquiry that defense counsel attempted to pursue. Often, he did so by pointing out that the proceeding was only a preliminary hearing, not a trial, and that "[t]here are limitations on cross examination at a preliminary hearing." Of course, once the prosecution sought to introduce the testimony at trial, any limits on cross-examination could not be justified on the ground that the testimony was initially given at a preliminary hearing. Feissa's testimony could be

admitted at trial only if Gibbs and Khalill had an adequate opportunity to cross-examine him.

Although some of the magistrate's stated justifications may have been inapt, the magistrate also pointed out that many of the proposed lines of cross-examination were duplicative of questions that Feissa had already answered or had answers that were otherwise obvious. For example, when asked about his potential criminal exposure, Feissa first responded that he faced "a couple of years" of imprisonment. When pressed further, he said "five, six or seven" years. Then he admitted it was seven. Khalill's counsel asked, "Okay. Seven years is more than a couple years, right?" The magistrate sustained an objection to that question, noting that "we don't need a discussion if seven is more than two."

In another instance, counsel inquired about the drug charge for which Feissa had promised the district attorney that he would perform community service in exchange for leniency. After Feissa admitted that he broke that promise by not performing the community service, counsel asked Feissa whether he had also promised the judge that he would perform the service. The magistrate sustained an objection to that question, reasoning that "the fact that [Feissa] told one person as opposed to another person" amounted to "harping on the same thing."

Counsel's desire to repeat some questions was understandable; Feissa was a remarkably evasive witness. Arguably, the magistrate should have allowed counsel greater freedom to try to pin him down. But the question before us is not whether we would have permitted more cross-examination, nor is it even whether the magistrate abused his "wide latitude . . . to impose reasonable limits on . . . cross-examination." *Van Arsdall*, 475 U.S. at 679.

Instead, the question is whether the California Court of Appeal unreasonably applied clearly established federal law in holding that the introduction of the preliminary-hearing transcript at trial did not violate the Confrontation Clause. Reviewing the questions to which the magistrate sustained objections—as well as the questions to which Feissa invoked the Fifth Amendment—we conclude that it was not unreasonable for the California Court of Appeal to determine that the questions would not have given the jury "a significantly different impression of [Feissa's] credibility." *Id.* at 680. There were indeed many reasons to doubt Feissa's credibility, but the jury learned those reasons when it heard the transcript of his cross-examination.

Second, we consider those questions defense counsel were unable to ask because the prosecution's disclosures about Feissa came only after the preliminary hearing. Gibbs and Khalill do not argue that the timing of the disclosures violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and they do not explain why the timing of the prosecution's disclosures is relevant to the Sixth Amendment issue presented here. Still less do they point to any "clearly established Federal law, as determined by the Supreme Court of the United States" supporting their position. 28 U.S.C. § 2254(d)(1). To the contrary, a plurality of the Supreme Court has stated that "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie*, 480 U.S. at 53 (plurality opinion); *see Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014); *Martir v. Lizarraga*, 183 F. Supp. 3d 1064, 1076 (N.D. Cal. 2016).

But even assuming that the timing of the disclosures implicated the Confrontation Clause, the California Court of

Appeal could reasonably conclude that questioning based on those disclosures would not have materially enhanced the effectiveness of the cross-examination. *See Van Arsdall*, 475 U.S. at 680. First, the disclosures revealed cash payments from the police to Feissa of about $4,000, in addition to the $3,000 that counsel had asked about at the preliminary hearing. But counsel were already able to question Feissa about his cash payments, and it is unclear how asking about a somewhat higher dollar amount would have made any difference. Second, the disclosures revealed that police detectives ultimately determined Feissa to be an unreliable informant. Defense counsel presented that fact at trial through a police officer's testimony, and Gibbs and Khalill do not explain what foundation there would have been for asking Feissa about it—indeed, they do not argue that Feissa was even aware of the detectives' opinion. Nor have they shown how it would have been a fruitful avenue for cross-examination. Accordingly, we cannot say that no fair-minded jurist could come to the conclusion reached by the California Court of Appeal, namely, that Gibbs and Khalill "had an adequate opportunity to cross-examine Feissa." *See Richter*, 562 U.S. at 102.

**AFFIRMED**.