**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DARREL ESTON LEE,

　　　　*Petitioner-Appellant*,

　v.

RYAN THORNELL,

　　　　*Respondent-Appellee*.

No. 10-99022

D.C. No. 2:04-cv-00039-JJT

OPINION

Appeal from the United States District Court
for the District of Arizona
John J. Tuchi, District Judge, Presiding

Argued and Submitted September 19, 2023
San Francisco, California

Filed July 24, 2024

Before:　William A. Fletcher, Eric D. Miller, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of Darrell Lee's federal habeas petition in which Lee—an Arizona prisoner sentenced to death following his conviction for murder and other offenses—contended that his trial counsel was ineffective in allowing him to testify falsely and in failing to present mitigating evidence.

In support of his claims, Lee sought to introduce evidence that he did not present in state court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), if an applicant for federal habeas relief "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" can show (A) that the claim relies either on a new rule of constitutional law made retroactive by the Supreme Court or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and (B) that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2254(e). A habeas petitioner has "failed to develop the factual basis of a claim," within the meaning of section 2254(e), only if "there is lack of diligence, or some

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

greater fault, attributable to the prisoner or the prisoner's counsel."

In *Shinn v. Ramirez*, 596 U.S. 366 (2022), the Supreme Court clarified that although *Martinez v. Ryan*, 566 U.S. 1 (2012), allows postconviction counsel's ineffectiveness to excuse the procedural default of certain claims of ineffective assistance of trial counsel, it does not permit a habeas petitioner to avoid the requirements of section 2254(e) when presenting new evidence on the merits of such claims; if section 2254(e) applies and the prisoner cannot satisfy its stringent requirements, a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*.

The panel held that the state court reasonably rejected Lee's claim that his trial counsel, Stephen Politi, was ineffective because he allowed Lee to testify to an alibi that Politi knew to be false. The factual premise of that argument is flawed because the record does not show that Politi knew the alibi to be false. At a minimum, the state court's rejection of Lee's assertion that he "confessed to the crime of murder to Mr. Politi" was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. In any event, even if Lee had told Politi that he was at the crime scene, it would have been reasonable for Politi to discount that statement given Lee's conflicting stories. Under section 2254(e)(2), the district court properly refused to consider a transcript of an interview of Lee's father that Lee first presented in federal court. The transcript is not a factual predicate that could not have been previously discovered through the exercise of due diligence, and does not establish by clear and convincing evidence that but for any constitutional error, no reasonable factfinder would have found Lee guilty. Even if Lee could show Politi's conduct

fell below an objective standard of reasonableness, he cannot show that he was prejudiced by it.

Regarding Lee's claim that Politi was ineffective in failing to investigate and present mitigating evidence to the sentencing court, the panel addressed the threshold issue whether to consider additional evidence that Lee presented for the first time in federal court. Following the Supreme Court's decision in *Ramirez*, Lee argued that section 2254(e) does not bar an evidentiary hearing in federal court because postconviction counsel was diligent and did not fail to develop the evidentiary record in state court. Assuming without deciding that Lee did not forfeit this argument, or alternatively, that this court may excuse his forfeiture, the panel concluded that the argument fails on the merits. Because Lee failed to develop the factual basis of his claim in state court proceedings, he would be entitled to an evidentiary hearing only if he qualified for section 2254(e)(2)'s exceptions. The panel concluded that Lee does not. Lee's claim does not rely on "a new rule of constitutional law." Nor does it rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." To the contrary, the evidence that Lee proffered to the district court is evidence that could have been discovered by his state postconviction counsel or his state investigator.

Without an evidentiary hearing, the panel's review was limited to the record presented to the state court. Based on that record presented to the state court, the panel held that the state court's rejection of Lee's claim that Politi was ineffective in failing to investigate and present mitigating evidence to the sentencing court was not objectively unreasonable. The panel's review of the record found no "powerful" mitigating evidence that was unexplored. The

panel also did not find that Politi was deficient in his presentation of mitigating or evidence, and concluded that Lee could not show prejudice in any event.

## COUNSEL

Timothy M. Gabrielsen (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender, District of Arizona, Federal Public Defender's Office, Tucson, Arizona; Stephen E. Eberhardt, Law Offices of Stephen E. Eberhardt, Tinley Park, Illinois; for Petitioner-Appellant.

Laura P. Chiasson (argued), Assistant Attorney General, Capital Litigation Section; Lacy Stover Gard, Chief Counsel; Jeffrey L. Sparks, Deputy Solicitor General, Section Chief of Capital Litigation; Mark Brnovich, Former Attorney General; Kristin K. Mayes, Attorney General; Office of the Arizona Attorney General, Tucson, Arizona; Jim Nielsen, Assistant Attorney General, Office of the Arizona Attorney General, Phoenix, Arizona; for Respondent-Appellee.

## OPINION

MILLER, Circuit Judge:

Darrel Eston Lee, an Arizona prisoner under sentence of death, appeals the district court's denial of his petition for a writ of habeas corpus. He contends that his trial counsel was ineffective in allowing him to testify falsely and in failing to investigate and present mitigating evidence. In support of his

claims, Lee sought to introduce evidence that he did not present in state court. But with limited exceptions, a federal court may not hold an evidentiary hearing when a habeas petitioner has failed to develop the factual basis for his claims in state court. The district court therefore correctly declined to consider Lee's new evidence and, based on the state-court record, correctly concluded that the state court's rejection of his claims was reasonable. We affirm.

## I

On December 5, 1991, Lee and a companion, Karen Thompson, approached John Calvin Anderson in Phoenix and asked him for a ride. Once in the car, Lee pretended to be armed and forced Anderson to drive to an ATM, where Lee and Thompson took Anderson's wallet and used his card to get money for drugs. They then drove toward Tucson. As Anderson pleaded for his life, Lee and Thompson bound his hands and feet and left him in a ditch on the side of the road. Thompson had second thoughts about leaving Anderson, so she and Lee returned and placed him in the trunk of the car. They drove back to Phoenix and then toward California, all the while with Anderson in the trunk.

Lee and Thompson ultimately decided to kill Anderson. Lee decided that they should asphyxiate Anderson with car exhaust by placing one end of a hose in the tailpipe and the other in the trunk. But the attempt failed when Anderson pushed open the trunk and let out the fumes. As Lee and Thomspon argued about what to do next, Anderson escaped from the trunk and began to flee. Lee chased Anderson and wrestled with him, and Thompson brought Lee a belt with which to strangle Anderson. When the belt broke, Lee told Thompson to get a rock. As Lee continued to wrestle with Anderson, Thompson struck Anderson on the head with the

rock, killing him. Lee and Thompson put Anderson's body in the trunk and drove to Tucson to buy a shovel, which they used to bury Anderson in a shallow grave outside the city.

An Arizona grand jury indicted Lee and Thompson on one count each of first-degree murder, kidnapping, theft, armed robbery, and credit-card theft. Thompson pleaded guilty to first-degree murder and armed robbery and agreed to testify against Lee. The State offered Lee a plea agreement under which the State would not pursue the death penalty. Lee first accepted the offer, then rejected it and proceeded to trial. At trial, Thompson testified that Lee was with her and assisted with Anderson's kidnapping and murder. Lee, however, testified that he was not present at the scene of the murder and was not with Thompson at the time.

The jury found Lee guilty on all counts. At the time of Lee's trial, Arizona law required the trial judge to make findings relevant to capital punishment and to determine the appropriate sentence. *See Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that the Sixth Amendment requires that a jury determine the existence of facts making a defendant eligible for capital punishment); *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (holding that *Ring* does not apply retroactively to cases already final on direct review). The judge therefore held an aggravation-mitigation hearing.

Before the hearing, the defense requested that Dr. Leonardo García-Buñuel, a forensic psychiatrist, examine Lee. Dr. García-Buñuel did so and prepared a written report. At the hearing, the prosecution presented no witnesses and relied on the evidence presented at trial. The defense also presented no witnesses, but it introduced Dr. García-Buñuel's report, copies of Lee's high-school records, and a letter from Lee's mother in which she asked that his life be

spared. The judge sentenced Lee to death. On direct appeal, the Arizona Supreme Court affirmed. *State v. Lee*, 917 P.2d 692, 703 (Ariz. 1996).

Lee pursued state postconviction relief. As relevant here, he argued that his trial counsel, Stephen Politi, had provided ineffective assistance in two different ways: first, by allowing him to present an alibi defense, and, second, by failing to investigate and present mitigating evidence at sentencing. The state postconviction relief court held a four-day evidentiary hearing. Lee presented testimony from several witnesses, including Politi, Lee's appellate counsel, the prosecutor, the prosecution's lead detective, Lee's mother, a mitigation specialist, an expert on ineffective assistance of counsel, and two psychiatric experts.

Lee asserted that Politi had acted unethically—and therefore performed deficiently—by presenting an alibi that Politi knew to be false. Although Lee did not testify at the postconviction relief hearing, he submitted an affidavit in which he alleged that "[d]uring one of our first in-depth meetings, early on in the case, I told Mr. Politi about my involvement in this case." Lee claimed that he was prejudiced by Politi's conduct because the false alibi caused the sentencing judge to discount his remorse as a mitigating factor.

For his part, Politi testified that when the prosecution offered a plea agreement, he had "advised [Lee] very strongly to take the deal" because it "was the best that I could do for him." To persuade Lee to accept the offer, Politi said, he had enlisted the support of his supervisor, Michael Burke, as well as Lee's parents. Lee accepted the deal but then changed his mind, opting to go to trial and pursue an alibi defense. Politi and Burke both testified that Lee hoped such

a defense would end with a full acquittal. As Politi explained, "the only acceptable result as far as [Lee] was concerned was that . . . he would go to trial, be found not guilty on all counts, and then walk away." Politi also suggested that Lee had not confessed to him.

The state postconviction court denied relief. As to the claim based on the alibi, the court stated that it could not "conclude that Mr. Lee confessed the crime of murder to Mr. Politi or that Mr. Politi acted unethically." The court also determined that even if Politi had acted unethically, there was no prejudice to Lee because "Lee's remorse was argued to the judge at sentencing and the judge actually found that as mitigating." The court further concluded that Politi had not provided ineffective assistance at the aggravation-mitigation hearing. The court explained that Politi "did search for mitigation," including by talking to Lee about his background, talking to Lee's family, reviewing Lee's medical and school records, and hiring a doctor to examine Lee. The court noted that Lee had identified no other evidence "that Politi could have presented." Ultimately, the court concluded, the lack of mitigating evidence "was due more to the fact that there was none, rather than to Politi's lassitude or incompetence." The Arizona Supreme Court summarily denied review.

Lee then petitioned for a writ of habeas corpus in federal court. The district court denied the petition. To support his claim based on the alibi, Lee proffered a 1992 transcript of the prosecutor's interview of his father, in which the prosecutor recalled Lee's telling him that he was at the crime scene. The district court declined to consider the transcript because Lee failed to present it in state court, "despite the fact that it was in the defense file and available to [him]." After a review of the state-court record, the district court

concluded that the state court's "findings [were] not unreasonable." The district court noted that it was unclear whether Lee told Politi that he was present during the crime, and that even if he had, "it would have been reasonable for counsel to discount this assertion given [Lee's] conflicting stories." The court also observed that Lee's "own expert testified that counsel's obligations with respect to a client whom an attorney suspects is not truthful are not always clear; thus it was not outside the wide range of professional assistance for Politi to continue his representation after [Lee] insisted on pursuing an alibi defense."

Lee sought an evidentiary hearing and expansion of the record to support his claim that Politi should have gathered additional mitigating evidence. Specifically, he sought to introduce declarations from various family members, social-history records, prison records from an earlier period of incarceration, medical records, and a declaration from his trial investigator.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, if an applicant for federal habeas relief "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" can show (A) that the claim relies either on a new rule of constitutional law made retroactive by the Supreme Court or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and (B) that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2254(e). Because the word "failed" suggests "some omission, fault, or negligence on the part of the person who has failed to do

something," a habeas petitioner has "failed to develop the factual basis of a claim," within the meaning of section 2254(e), only if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 431–32 (2000).

Applying that standard, the district court found that Lee's counsel in the state postconviction proceedings, Matthew Newman, had not acted diligently. The court explained that "omissions by counsel are in fact attributable to a habeas petitioner" and that Newman "was on notice regarding the evidence [Lee] now seeks to introduce," so "his failure to introduce such evidence in state court triggers § 2254(e)." *See Williams*, 529 U.S. at 432, 437–40. The district court therefore denied an evidentiary hearing.

Reviewing the record presented to the state postconviction relief court, the district court concluded that the state court reasonably determined that Politi was not deficient in his presentation of mitigating evidence. The district court noted that Politi had submitted a memorandum arguing against the State's alleged aggravators and identifying mitigating circumstances and that he had presented an expert report, school records, and a letter from Lee's mother. Because Lee's social history was laid out in a presentence report prepared by the court's probation department, the district court concluded that Politi's decision not to present lay social-history witnesses was reasonable. The district court also noted that Lee conceded that he was unable to show prejudice from Politi's allegedly deficient performance.

Lee appealed. While the appeal was pending, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), which altered the rules governing procedural default. Claims

asserted in federal habeas proceedings are procedurally defaulted—and federal habeas relief is generally unavailable—"when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977). Federal courts may consider the merits of procedurally defaulted claims only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Because there is no constitutional right to counsel in postconviction proceedings, ineffective assistance of counsel in those proceedings does not establish cause for the procedural default of a claim. *Id.* at 752–53. In *Martinez*, however, the Supreme Court announced a narrow exception to the general rule: If a State requires that a claim of ineffective assistance of trial counsel be raised in a collateral-review proceeding rather than on direct appeal, procedural default will not bar federal habeas relief "if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17.

In the wake of *Martinez*, we decided *Detrich v. Ryan*, holding that "[f]or procedurally defaulted claims" of ineffective assistance of trial counsel "to which *Martinez* is applicable, the district court should allow discovery and hold an evidentiary hearing where appropriate to determine whether there was 'cause' under *Martinez* for the state-court procedural default and to determine, if the default is excused, whether" trial counsel in fact provided ineffective assistance. 740 F.3d 1237, 1246 (9th Cir. 2013) (en banc). We

acknowledged that "a federal habeas court is ordinarily confined to the evidentiary record made in state court." *Id.* at 1247 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)). But we concluded that that rule "does not prevent a district court from holding an evidentiary hearing in a *Martinez* case." *Detrich*, 740 F.3d at 1247.

Then, in *Dickens v. Ryan*, we held that section 2254(e) "does not bar a hearing before the district court to allow a petitioner to show 'cause' under *Martinez*." 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc). We reasoned that "[a] federal court's determination of whether a habeas petitioner has demonstrated cause and prejudice (so as to bring his case within *Martinez*'s judicially created exception to the judicially created procedural bar) is not the same as a hearing on a constitutional claim for habeas relief." *Id.* We therefore concluded that "a petitioner, claiming that [postconviction relief] counsel's ineffective assistance constituted 'cause,' may present evidence to demonstrate this point," as well as "to demonstrate that there is 'prejudice,' that is that petitioner's claim is 'substantial' under *Martinez*." *Id.*

In response to those decisions, we remanded this case for the district court to reconsider Lee's claims. The district court again denied relief, and Lee again appealed. After the appeal was fully briefed, new case law again intervened when the Supreme Court decided *Shinn v. Ramirez*, 596 U.S. 366 (2022). In that case, the Court clarified that although *Martinez* allows postconviction counsel's ineffectiveness to excuse the procedural default of certain claims of ineffective assistance of trial counsel, it does not permit a habeas petitioner to avoid the requirements of section 2254(e) when presenting new evidence on the merits of such claims. *Ramirez*, 596 U.S. at 371. Rejecting the reasoning of our post-*Martinez* decisions, the *Ramirez* Court held that if

section 2254(e) applies and "the prisoner cannot satisfy its 'stringent requirements,' a federal court may not hold an evidentiary hearing—or otherwise consider new evidence— to assess cause and prejudice under *Martinez*." *Id.* at 389 (citation omitted) (quoting *Williams*, 529 U.S. at 433). At Lee's request, we ordered the parties to file new briefs addressing *Ramirez*.

## II

Both of the claims before us are based on the alleged ineffective assistance of trial counsel. In *Strickland v. Washington*, the Supreme Court prescribed a two-part test for evaluating such claims. 466 U.S. 668 (1984). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Our evaluation of counsel's performance "must be highly deferential," to "eliminate the distorting effects of hindsight." *Id.* at 689; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002). We must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Second, a defendant must show that counsel's deficiency was prejudicial, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"'Surmounting *Strickland*'s high bar is never an easy task,'" and "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). It is especially difficult in habeas proceedings because AEDPA provides that when a claim has been "adjudicated on the

merits in State court," a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under that standard, obtaining relief requires a petitioner to "show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam)). Instead, the petitioner must show "that the state court's decision [was] so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Gibbs v. Covello*, 996 F.3d 596, 603 (9th Cir. 2021).

When both the *Strickland* and the AEDPA standards "apply in tandem," *Richter*, 562 U.S. at 105, our review becomes "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam). In particular, we "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter*, 562 U.S. at 105. To evaluate deficiency in a case governed by AEDPA, we ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* And even if we determine that counsel performed deficiently, we cannot say the defendant was prejudiced unless the state court's contrary view would be erroneous "beyond any possibility for fairminded disagreement." *Id.* at 103.

Applying those principles, we review the district court's decision de novo. *Oliver v. Davis*, 25 F.4th 1228, 1233 (9th Cir. 2022).

III

A

We begin by considering Lee's claim that Politi was ineffective because he allowed Lee to testify to an alibi that Politi knew to be false. The state postconviction review court rejected that claim, and Lee has not shown that its decision was unreasonable.

Although the parties refer to Lee's testimony as an "alibi defense," Lee offered an alibi only in the most limited sense. At trial, Lee said that he was not with Thompson at the time of the murder, but he revealed where he was only in the vaguest of terms. Although one could infer from his account of the day of the murder that he claimed to be at a trailer park in Phoenix where he and Thompson had originally met, he did not elaborate on his whereabouts. Thus, Lee's present objection to Politi's decision to let him present an alibi defense is really an objection to Politi's decision to let him deny involvement in Anderson's murder.

It was Lee, not Politi, who was opposed to accepting a plea agreement or presenting any defense other than one denying all involvement. Politi explained that he and Burke did everything they could to convince Lee to accept the plea agreement, or failing that, to present a diminished-capacity defense. Lee refused. Politi testified that at one point Lee stated that "he would rather have the gas chamber" than accept any plea agreement. Lee does not argue that his choice was uninformed or challenge the adequacy of Politi's

efforts to ensure that he understood the consequences of his decision.

Because a defendant does "not surrender control entirely to counsel," Politi could not have admitted Lee's guilt over his objections without violating Lee's Sixth Amendment rights. *McCoy v. Louisiana*, 584 U.S. 414, 421 (2018). Rather, "a defendant has the right to insist that counsel refrain from admitting guilt, even when . . . confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* at 417; *see also Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Similarly, Lee errs in suggesting that Politi should somehow have prevented him from taking the stand. A defendant has a constitutional right to testify, and the choice of whether to exercise that right belongs to the defendant, not to counsel. *See Rock v. Arkansas*, 483 U.S. 44, 53 (1987); *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The thrust of Lee's argument is that Politi behaved unethically in allowing Lee to testify that he was not involved in the murder because Lee had confessed his involvement to Politi, and therefore Politi knew that Lee's testimony was false. The factual premise of that argument is flawed because the record does not show that Politi knew the alibi to be false. At a minimum, the state court's rejection of Lee's assertion that he "confessed the crime of murder to Mr. Politi" was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Significantly, Politi attempted to track down individuals who could corroborate Lee's story, and he directed investigators to pursue alibi-

related leads that Lee provided—actions that would have made no sense had Politi known that the alibi was false.

Lee points to a set of notes from the prosecution's investigator describing a plea-negotiation meeting attended by Politi, Lee, and the prosecutor. The notes stated that Lee "claims Anderson was murdered by [Thompson] but admits he was present." But the investigator testified that he was not present during the meeting, and the prosecutor testified that he had no specific recollection of the meeting. Politi himself testified that he did not remember what Lee said at the meeting.

Lee also points to an entry in Politi's trial diary in which Politi wrote that he "told [Lee] of my conversation with his father this afternoon and the inevitable ethical dilemma I face as regards to the alibi defense" and that he "[d]iscussed [the] problem with Mike Burke, and the likely necessity of filing a motion to withdraw based upon an irreconcilable conflict of interest." Politi testified, however, that he could not recall what prompted him to write that entry. And Burke testified that Lee never confessed his involvement in the crime to him, and that the "ethical dilemma" described in the diary may have referred to information provided by Lee's father that led Politi to question Lee's alibi. Nothing in the notes or the diary entry proves that Lee confessed.

In any event, as the district court noted, even if Lee had, at some point before trial, told Politi that he was at the crime scene, it would have been reasonable for Politi to discount that statement "given [Lee]'s conflicting stories." At most, Politi had reason to doubt the veracity of Lee's denial of involvement in the murder. As Lee's own expert explained, "it's a very difficult question for a defense attorney to really ascertain when . . . the [client] is actually lying." Of course,

an attorney should attempt to dissuade a client from committing perjury, and if the client "informs counsel that he will perjure himself on the stand," it is appropriate for the attorney to withdraw from the representation. *Nix v. Whiteside*, 475 U.S. 157, 166, 170–71 (1986). But Lee has identified no rule that would have *required* Politi's withdrawal in the circumstances of this case. Rather, as the commentary to the Arizona Rules of Professional Conduct explained at the time, the duty of "an advocate for a criminally accused" to disclose potentially perjurious testimony "has been intensely debated," and "[w]hile it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails." Ariz. R. Prof. Conduct 3.3 cmt. (1992). It follows that, as the district court reasoned, "it was not outside the wide range of professional assistance for Politi to continue his representation" despite Lee's insistence on denying involvement in the murder. And at a minimum, the state court's conclusion to that effect was not an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1).

Before the district court, Lee claimed that a 1992 transcript of an interview of Lee's father by the prosecutor proved that Lee had confessed his participation in the murder during plea negotiations at which Politi was present. That claim suffers from the same flaw we have already discussed: Even if Lee did confess, Politi might reasonably have believed Lee's statements denying involvement and disbelieved his confession. More importantly, Lee first presented the evidence in federal court, even though it was in the defense file and available to Lee during state court proceedings. The transcript is therefore not "a factual predicate that could not have been previously discovered

through the exercise of due diligence." 28 U.S.C.
§ 2254(e)(2)(A)(ii). Nor does it "establish by clear and
convincing evidence that but for the constitutional error, no
reasonable factfinder would have found [Lee] guilty of the
underlying offense." *Id.* § 2254(e)(2)(B). Because the
requirements of section 2254(e) are not met, "a federal court
cannot . . . consider [the] evidence on the merits." *Ramirez*,
596 U.S. at 389. The district court therefore properly refused
to consider the transcript.

Finally, even if Lee could show that Politi's conduct "fell
below an objective standard of reasonableness," *Strickland*,
466 U.S. at 688, he cannot show that he was prejudiced by
it. Lee contends that he suffered prejudice at sentencing
because his trial testimony impaired his ability to
demonstrate remorse, which would have been a basis for
mitigation. But Lee did plead remorse to the sentencing
court, and that court found it to be mitigating. To the extent
the sentencing court declined to give greater weight to
evidence of Lee's remorse, it explained that it did so because
Lee's "first reported demonstration of remorse [came] long
after the killing." No change in trial strategy could have
altered that fact. Notably, the expressions of remorse that
Lee now cites as examples of his contrition all came *after*
sentencing. The state postconviction relief court therefore
reasonably determined that Lee did not establish "a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different." *Strickland*, 466 U.S. at 694.

## B

We now turn to Lee's claim that Politi was ineffective in
failing to investigate and present mitigating evidence to the
sentencing court. In evaluating that claim, a threshold issue

is whether to consider additional evidence that Lee presented for the first time in federal court. As we have already explained, section 2254(e) provides that with limited exceptions, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim." 28 U.S.C. § 2254(e)(2).

Before the district court, Lee argued that Newman, his postconviction counsel, "was ineffective in not investigating and presenting the mitigating evidence which existed," and that the State had "appointed incompetent counsel to represent him at his postconviction proceedings." Advancing that argument was a reasonable strategy under our decisions in *Detrich* and *Dickens* because the ineffectiveness of postconviction counsel would have been a basis for obtaining an evidentiary hearing to develop Lee's underlying claims of ineffective assistance of trial counsel.

Under *Ramirez*, however, it is now clear that the ineffectiveness of postconviction counsel does not allow a petitioner to escape the requirements of section 2254(e). *See* 596 U.S. at 371. So, before this court, Lee has done an about-face. He now argues that Newman *was* diligent, that he did not "fail[]" to develop the evidentiary record in state court, and that section 2254(e) thus does not bar an evidentiary hearing in federal court. The State argues that this new argument is forfeited. We assume without deciding that Lee did not forfeit the argument, or, alternatively, that we may excuse his forfeiture. We conclude that the argument fails on the merits.

In the state postconviction proceedings, Newman sought and was granted an evidentiary hearing. But the evidence he presented at that hearing was limited by the failure of his

mitigation specialist, Mary Durand, to conduct an effective investigation. In an effort to show diligence, Lee points out that Newman requested continuances of the hearing and the appointment of an additional investigator. When Newman's motion to continue the hearing was denied, he asked the Arizona Supreme Court for special action to grant the continuance, which it did. And after the postconviction relief court refused to appoint another investigator to help Durand, Newman sought reconsideration of that ruling.

By themselves, however, those actions are not sufficient to demonstrate diligence. In denying reconsideration of the order denying an additional investigator, the court explained that Newman had "supplie[d] no more specifics than he did in the original motion—who, where, when, how much it will cost the state, how it is relevant." Diligence would have entailed providing the information necessary to verify the need for an additional investigator. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (explaining that "[m]ere requests for evidentiary hearings will not suffice" to demonstrate diligence when a petitioner fails to present affidavits he could easily have obtained).

For her part, Durand ultimately failed to complete her mitigation investigation before the postconviction evidentiary hearing. It is true that Durand was seriously ill and had many other cases to manage. But what matters is that Durand failed to complete her work, despite the 18-month period during which she investigated and attempted to gather evidence for the hearing. As a result, the defense postconviction psychiatrist, Dr. Barry Morenz, never received Durand's social history of Lee. And Newman himself acknowledged that Dr. Morenz needed Lee's social history to "complete his final meeting and evaluation." All

that Durand ultimately sent to Dr. Morenz were inscrutable handwritten notes.

Lee insists that Durand's lack of diligence "in no way detract[ed] from" Newman's diligence. But even if Durand acted diligently and was prevented from completing her investigation by medical problems beyond her control, Newman had a duty to supervise her and take corrective action in response to her failures. Newman acknowledged this on the first day of the evidentiary hearing before the postconviction relief court, when he stated that the failure to investigate was "my fault. I accept responsibility, too. I should have stayed on top of Mary Durand better, and I didn't." In a declaration filed in the subsequent federal habeas proceedings, Newman admitted that he later became aware of the mitigating evidence that Lee's federal habeas counsel went on to develop. That evidence, he explained, was "precisely the type of evidence I hoped to acquire with Ms. Durand's assistance. At a minimum, I owed Mr. Lee a duty to perform an investigation that would have uncovered that evidence." And he again (correctly) took responsibility for Durand's failures. He also stated that he had promised Dr. Morenz a social history, "but I never delivered on that promise."

"Attorney error that does not violate the Constitution"—including attorney error in postconviction proceedings, where there is no constitutional right to counsel—"is attributed to the prisoner under 'well-settled principles of agency law.'" *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quoting *Coleman*, 501 U.S. at 754); *see also Coleman*, 501 U.S. at 753–54 (explaining that an attorney's lack of diligence is attributable to a petitioner because the "attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation" and that the petitioner therefore

"'bear[s] the risk of attorney error'" (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986))). Newman was responsible for Durand's failures, so her errors were his errors. Thus, Newman's failure to properly oversee Durand is attributable to Lee.

We draw the same conclusion as the district court: Lee was not diligent in developing the factual basis of his claim before the state court. Because Lee "failed to develop the factual basis of [his] claim in State court proceedings," he would be entitled to an evidentiary hearing only if he qualified for section 2254(e)(2)'s exceptions. 28 U.S.C. § 2254(e)(2). He does not. His claim does not rely on "a new rule of constitutional law." *Id.* § 2254(e)(2)(A)(i). Nor does it rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* § 2254(e)(2)(A)(ii). To the contrary, the evidence that Lee proffered to the district court is evidence that could have been discovered by his state counsel or his state investigator.

Without an evidentiary hearing, we are limited to the record presented to the state court. Based on that record, the state court's rejection of Lee's *Strickland* claim was not objectively unreasonable.

The state court found that Politi conducted a reasonable mitigation investigation and that the scope of his investigation was appropriate. The record developed at the postconviction relief hearing supports that finding. Politi ensured that Lee's mental health was evaluated, that an investigator was appointed, that information was gathered from family members, and that social history records were collected. Politi also obtained Lee's school, medical, and incarceration records. He even searched for any history of

Lee's exposure to toxic chemicals. It is true that there were additional family members, friends, and acquaintances whom Politi could have interviewed, but Lee did not establish at the postconviction hearing that those interviews would have uncovered new information. Indeed, "there comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009) (per curiam). We thus agree with the district court that "[t]his is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face." *Id.* Rather, the "decision not to seek more" mitigating evidence was a decision that was "well within the range of professionally reasonable judgments." *Id.* at 11–12 (quoting *Strickland*, 466 U.S. at 699). Our own review of the record reveals no "powerful" mitigating evidence that Politi left unexplored. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

We also do not find that Politi was deficient in his presentation of mitigating evidence. Politi did, after all, submit a memorandum arguing against the State's alleged aggravators, and he presented an expert medical report, school records, and a letter from Lee's mother. The presentence report also set forth Lee's social history and highlighted many relevant aspects of Lee's life, such as his educational, employment, and health histories. It was thus reasonable to not call lay social-history witnesses. And at the postconviction relief hearing, Politi explained his tactical decision not to call Lee's parents (who had frequently and unhelpfully intervened in Politi's investigation by insisting that he interview witnesses from the trailer park), or Dr. García-Buñuel (who had himself told Politi that it would be unwise to call him). These are precisely the kinds of decisions that fall within the wide range of acceptable

conduct for counsel. *See, e.g.*, *Strickland*, 466 U.S. at 689; *Cox v. Del Papa*, 542 F.3d 669, 683–84 (9th Cir. 2008).

Nor could Lee show prejudice in any event. The prejudice analysis "requires an evaluation of the strength of all the evidence and a comparison of the weight of aggravating and mitigating factors." *Thornell v. Jones*, 144 S. Ct. 1302, 1314 (2024). But the postconviction relief court explained that Lee showed the court no additional evidence that "Politi could have presented." Ultimately, the court concluded, the absence of additional mitigating evidence "was due more to the fact that there was none, rather than to Politi's lassitude or incompetence." That conclusion was objectively reasonable.

**AFFIRMED.**