**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ANDRE KING-HARDIMAN,

          Petitioner - Appellee,

  v.

NETHANJAH BREITENBACH;
ATTORNEY GENERAL OF THE STATE
OF NEVADA,

          Respondents - Appellants.

No. 24-598

D.C. No.
3:19-cv-00484-ART-CSD

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted March 3, 2025
Las Vegas, Nevada

Before: RAWLINSON, MILLER, and DESAI, Circuit Judges.

Andre King-Hardiman pleaded guilty in Nevada state court to the murder of

his estranged wife and to related offenses. He then moved to withdraw his plea.

The state court denied his motion and later sentenced him to life without the

possibility of parole. The Nevada Court of Appeals affirmed. After unsuccessfully

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

seeking state post-conviction relief, King-Hardiman filed a petition for a writ of habeas corpus in federal district court. The district court granted the petition on the grounds that King-Hardiman's plea was invalid and that his counsel provided ineffective assistance by inadequately advising him about the plea. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we reverse.

We review the district court's grant of habeas relief de novo. *Crittenden v. Chappell,* 804 F.3d 998, 1006 (9th Cir. 2015). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

1. The conclusion of the Nevada Court of Appeals that King-Hardiman's plea was valid was based on a reasonable determination of the facts and was a reasonable application of clearly established federal law. A guilty plea is valid if it is entered "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)). King-Hardiman asserts that at the time of his plea, he was not aware that life without the possibility of parole—the sentence he ultimately received—was an

option because the trial court confusingly stated that he could be sentenced to "20 on the bottom, life without the possibility of parole" or "20 to life without the possibility of parole." Of course, a sentence of life without the possibility of parole is incompatible with the possibility of release after 20 years.

Nevertheless, it was reasonable for the state court to conclude that King-Hardiman was aware that he could receive life without parole. The plea agreement stated the maximum sentence unambiguously: "life without the possibility of parole." In the plea agreement, King-Hardiman and his counsel both represented that his counsel had explained the consequences of his plea to him. At the plea hearing, after King-Hardiman told the court that he did not believe that life without the possibility of parole was part of the agreement, one of his attorneys clarified in open court that it was. The court then took a recess so King-Hardiman could further confer with his counsel. And at sentencing, King-Hardiman expressed no disagreement when the court told him that he could be sentenced to "life without."

King-Hardiman argues that the determination of the Nevada Court of Appeals that the trial court "thoroughly canvassed Hardiman regarding his plea" was unreasonable. That finding, however, was supported because, in addition to allowing the recess, the trial court confirmed that King-Hardiman could read and understand English, that he had reviewed the indictment, that he had discussed it with his counsel, and that no one coerced him into the plea.

King-Hardiman also argues that his plea was invalid because he did not understand the nature of the murder charge to which he pleaded guilty. But it was reasonable for the state court to conclude otherwise. In the plea agreement, King-Hardiman represented that he understood "the nature of the charge(s) against" him, that he had "discussed the elements of all of the original charge(s) against [him] with [his] attorney," and that the "elements . . . [had] been thoroughly explained to" him. His counsel represented that they had "fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered." At the plea hearing, when King-Hardiman asked whether he was admitting to premeditation, one of his attorneys and the judge clarified that under a felony-murder theory, the factual predicate of the offense could instead be the burglary and home invasion, and King-Hardiman replied that he understood.

2. The state court's conclusion that King-Hardiman's counsel did not provide ineffective assistance and adequately advised him of the consequences of his plea was based on a reasonable determination of the facts and was a reasonable application of clearly established federal law. "When both the *Strickland* [*v. Washington*] and the AEDPA standards 'apply in tandem,' our review becomes 'doubly deferential.'" *Lee v. Thornell*, 108 F.4th 1148, 1157 (9th Cir. 2024) (citations omitted) (first quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011); and then quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

A defendant's counsel must "inform [him] of the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50 (1995). Here, there is at the very least a "reasonable argument that counsel satisfied *Strickland*'s deferential standard" by so informing King-Hardiman. *Richter*, 562 U.S. at 105. In the plea agreement, both King-Hardiman and his counsel affirmed that King-Hardiman was adequately advised of the consequences of his plea. His counsel intervened during the plea hearing so that they could further advise him. And at the evidentiary hearing in state post-conviction proceedings, King-Hardiman testified that his counsel discussed the possible life-without-parole sentence with him. That King-Hardiman's counsel did not object to the trial judge's descriptions of the possible maximum sentence or ask for a continuance does not mean that their performance was deficient; his counsel could have reasonably concluded, based on their conversation with King-Hardiman during the recess, that no objection or continuance was necessary.

**REVERSED.**